IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SOUTHERN OPERATORS HEALTH FUND, | ) ) ) | |
| Plaintiff, | ) ) | NO. 3:19-cv-00268 |
| v. | ) ) | JUDGE RICHARDSON |
| SKY LIMIT EQUIPMENT, LLC, | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Southern Operators Health Fund, has filed a Motion for Entry of Default Judgment (Doc. No. 63, "Motion"), supported by an accompanying Memorandum of Law. (Doc. No. 64, "Memorandum"). Defendant, Sky Limit Equipment, LLC, did not file a response.

Via the Memorandum, Plaintiff requests the Court to (1) enter default judgment in favor of Plaintiff and order Defendant to pay $40,666.54 to the Plaintiff Fund, and (2) declare moot the pending question of whether Defendant is in contempt of violating a permanent injunction. For the reasons stated herein, Plaintiff's Motion will be **GRANTED.**

**PROCEDURAL HISTORY**

The suit arises under the Employee Retirement Income Security Act ("ERISA"). (Doc. No. 1 at 1). Plaintiff is an employee benefit plan (as defined in ERISA at 29 U.S.C. 1002(1)), primarily funded through contributions paid by multiple employers pursuant to negotiated collective bargaining agreements. (*Id.*). Defendant is an employer who, at all times relevant, was subject to "a collective bargaining agreement ["CBA"] requiring Defendant to pay contributions to the

Plaintiff on behalf of its employees." (*Id.* at 2). Under ERISA, any employer who is obligated, under the terms of a CBA, to make contributions to an employee benefit plan must do so in accordance with the terms and conditions of such agreement. (*Id.* at 3) (citing 29 U.S.C. § 1145). Defendant violated ERISA provisions and breached the CBA by not making the required contributions to Plaintiff.

In response to these violations, Plaintiff filed this present lawsuit on April 1, 2019 requesting: (i) "[a] permanent injunction enjoining Defendant from violating the provisions of ERISA, the collective bargaining agreement, and the trust agreement requiring payment of contributions"; and (ii) "[a] judgment against Defendant in favor of the Plaintiff for all sums that are owed as of the date of the judgment plus for the Plaintiff the greater of double interest or single interest plus liquidated damages and all attorney fees and costs incurred in connection with this action." (Doc. No. 1 at 4).

A summons was issued to Defendant on April 3, 2019; and an Affidavit of Service on Defendant was filed by Plaintiff on April 22, 2019. (Doc. Nos. 4, 7). On May 22, 2019, Plaintiff filed for Entry of Default as Defendant had failed to answer or otherwise respond to the Complaint. (Doc. No. 8). The clerk's office entered default pursuant to Fed. R. Civ. P. 55(a) on June 7, 2019. (Doc. No. 12). Plaintiff then filed a Motion for Preliminary Injunction requesting that Defendant be obligated to submit the "reports and payments required under [the] collective bargaining agreement." (Doc. No. 13). The Court initially responded to the preliminary injunction request by noting "the Court is loath to grant a motion for preliminary injunctive relief against a party who was not adequately served with the motion" and ordering Plaintiff to confirm Defendant was served "properly and at the right address." (Doc. No. 17). Plaintiff responded to this order with sufficient proof of service upon Defendant, and on July 17, 2019 the Court granted the preliminary

injunction requiring Defendant to submit contributions and reports to Plaintiff. (Doc. No. 20). On August 7, 2019, Plaintiff submitted a motion requesting a hearing as to whether Defendant, and its president Sam Barrington, should be found in civil contempt for violating the preliminary injunction. (Doc. No. 21). The Court granted this request and ordered Mr. Barrington and a representative for Defendant to appear in Court on October 30, 2019 to show cause for why they should not be held in contempt. (Doc. No. 23). By October 1, 2019, the parties appeared to have "resolved all outstanding differences," and upon Plaintiff's request, the show cause hearing was canceled and the case was dismissed subject to being reopened if Defendant did not satisfy the conditions of the permanent injunction requiring it to conform its conduct to the requirements of ERISA. (Doc. Nos. 27-29).

On February 3, 2020, Plaintiff moved to reopen the case on the grounds that Defendant had once again failed to make the required contributions. (Doc. No. 32). The case was re-opened, and a telephonic show cause hearing was scheduled for July 1, 2020. (Doc. No. 33). On June 26, 2020, Plaintiff advised the Court that Defendant was now complying with the terms of the permanent injunction, and the case was administratively closed subject to re-opening. (Doc. No. 38). On December 23, 2020, Plaintiff moved to re-open the case on the grounds that Defendant had again violated the injunction. (Doc. No. 39). A telephonic show cause hearing was scheduled for February 18, 2021 but then later canceled, and the case administratively closed when Defendant resumed compliance with the injunction. (Doc. Nos. 40, 45).

For the final time, the case was re-opened at Plaintiff's request on May 5, 2021 on the grounds that Defendant had resumed its failures to submit the required contributions and reports to Plaintiff. (Doc. No. 46). The Court ordered the Defendant, through Sam Barrington, to participate in a telephonic show cause hearing on July 1, 2021 to "show cause why he and

Defendant should not be held in civil contempt and punished for failure to comply with the agreed permanent injunction ordered by this Court on October 1, 2019." (Doc. No. 47). During the show cause hearing, Plaintiff's counsel agreed (subject to his client's consent) to have the Court defer a ruling on the contempt finding if Defendant complied with certain express conditions. Five days later, Plaintiff's counsel filed a notice confirming that his client did consent to the Court waiting to decide the contempt question until further notice from Plaintiff as to whether Defendant appropriately complied. (Doc. Nos. 52, 53). On August 13, 2021, Plaintiff filed a notice informing the Court that Defendant and Mr. Barrington failed to comply with the conditions established after the July 1, 2021 show cause hearing. (Doc. No. 56). The Court then issued an order to Defendant and Mr. Barrington requiring them to participate in another show cause hearing, scheduled for August 24, 2021, to explain why they should not be held in civil contempt. (Doc. No. 57).

Neither Defendant nor Mr. Barrington joined the August 24, 2021 telephonic show cause hearing. In turn, the Court found Defendant, through Mr. Barrington, to be in civil contempt, but also included that Defendant could purge the contempt "by submitting to Plaintiff all reports and payments due and doing so before September 7, 2021 at 5:00pm CST." (Doc. No. 59). On November 11, 2021, Plaintiff filed this Motion for Entry of Default Judgment requesting default judgment against Defendant in the amount of $40,666.54, and also requesting the Court "declare moot the pending question of whether Defendant and Sam Barrington are in contempt for violation of a permanent injunction."[1] (Doc. Nos. 63, 64).

---

[1] It would have been more precise for Plaintiff to have characterized the pending question as whether the contempt could still be purged, since the Court has already found (in its August 24, 2021 order) Defendant, through Mr. Barrington, to be in contempt .

# STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs entry of judgment by default. In order to obtain judgment by default, the proponent must first request the clerk's entry of default pursuant to Rule 55(a). Once a default has been entered by the clerk, the plaintiff's well-pleaded allegations are deemed admitted. *See, e.g., Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007). The plaintiff may then request entry of default judgment by either the clerk or by the court, depending on the specificity of the plaintiff's claim. Fed. R. Civ. P. 55(b).

More explicitly, when the plaintiff's claim is for a sum certain, the clerk "on plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing . . . ." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). A default judgment may be entered without a hearing unless one is necessary to determine the amount of monetary damages. *Id.* The court must exercise "sound judicial discretion" when determining whether to enter the default judgment. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2685 (3d ed. 1988); *see also Applebaum v. Target Corp.*, No. 11-cv-15035, 2015 WL 13050014, at *1 (E.D. Mich. Sept. 10, 2015).

When a Plaintiff is not seeking an award of damages in a "sum certain" (and is instead requesting default judgment pursuant to Fed. R. Civ. P. 55(b)(2)), the Sixth Circuit has noted:

> . . . Rule 55(b)(2) provides that the district court "may conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." (Emphasis added.) This provision, by its terms, allows but does not require the district court to conduct an evidentiary hearing. *See Fustok v. ContiCommodity Servs*., Inc., 873 F.2d 38, 40 (2d Cir.1989) ("[I]t was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.").

*Vesligaj v. Peterson*, 331 F. App'x 351, 354–55 (6th Cir. 2009). "Proof of damages ordinarily requires an evidentiary hearing in which the defendant may contest the amount, but a hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Broad. Music, Inc. v. Marler*, No. 1:09–CV–193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009).

## DISCUSSION

As noted, obtaining default judgment is a two-step process. Fed. R. Civ. P. 55. Plaintiff has already satisfied the first step by requesting (and obtaining) entry of default from the Clerk (Doc. Nos. 8, 12). Fed. R. Civ. P. 55(a). At the second step of the process, Plaintiff should take one of two paths, with the proper choice of path depending upon the nature of the case and the plaintiff's requested relief, as discussed above.

In this case, Plaintiff has chosen the proper path for the second step by requesting this Court to grant default judgment. Fed. R. Civ. P. 55(b)(2). This is appropriate because this is indeed a request governed by Rule 55(b)(2) rather than Rule 55(b)(1), since Plaintiff does not seek judgment for a "sum certain" within the meaning of Rule 55(b)(1). As the First Circuit has cogently explained, citing applicable case law:

> In the Rule 55 context, a claim is not a sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default. *See, e.g., Reynolds Sec., Inc. v. Underwriters Bank & Trust, Co.*, 44 N.Y.2d 568, 406 N.Y.S.2d 743, 378 N.E.2d 106, 109 (1978) ("The term 'sum certain' in this context contemplates a situation in which, once liability has been established, there can be no dispute as to the amount due, as in actions on money judgments and negotiable instruments."); *see also Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1193 (Me.1993) ("Such situations include actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof.").

*KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19–20 (1st Cir. 2003). This is not such a case, since the monetary relief Plaintiff requests is in an amount that was by no means necessarily

indisputable on the front end (even though Defendant has failed to dispute the amount on the back end).

Given the entry of default (Doc. No. 12), the Court will accept as true those allegations in the complaint asserting liability that are "well-pleaded." But that raises the question of when allegations concerning liability are considered "well pleaded" and when they are not; it also brings into focus the principle that not all allegations of liability are sufficient to support a default judgment. On these issues, one district court in this circuit has explained:

> "[a] defendant's default does not itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleading for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 15 F.2d 1200, 1206 (5th Cir.1975). "[I]t follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the [default] judgment. *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1988). *See also Conetta v. Nat'l Hair Care Centers, Inc.*, 236 F.3d 67, 76 (1st Cir.2001) (noting that a defaulted defendant "may still contest a claim on the ground that the complaint does not add up to the elements of a cause of action").

*Dalmayer v. Michigan*, No. 08-12784, 2009 WL 1378322, at *2 (E.D. Mich. May 14, 2009). This means that a claim, to be "well pleaded," must at least satisfy "Rule 8(a) of the Federal Rules of Civil Procedure [, which] sets forth the basic federal pleading requirement that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*

Here, Defendant has failed to respond to the Motion. However, the Court still finds it important to address the plausibility of Plaintiff's allegations. Upon thorough review of the record of the case, the Complaint, and Plaintiff's Motion and Memorandum in Support, the Court concludes that the allegations of liability underlying Plaintiff's claims are well pleaded in that they satisfy Rule 8(a). Among other things, these allegations comply with the pleading standards set forth in the bellwether cases of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007). The Court therefore accepts those allegations as true and finds that they establish entitlement to relief on Plaintiff's claims.

As noted, the relief Plaintiff seeks includes an uncertain amount of damages. "Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (citation omitted).[2] But to say that unliquidated damages (like those Plaintiff claims here) must be proved is not to say that they must be proved at an evidentiary hearing; as discussed above, in some cases, damages that must be sought via Rule 55(b) can be awarded by the court without an evidentiary hearing. This is just such a case. The Court concludes that an evidentiary hearing is unnecessary in light of Plaintiff's Memorandum (Doc. No. 64) and the Declarations of both Kimberly Reynolds and R. Jan Jennings (Doc. Nos. 65, 66), which establishes the existence and amount of the damages Plaintiff is claiming.[3] Accordingly, the Motion will be granted without an evidentiary hearing, especially (but not only) considering the fact that the Court is not confident Defendant (or counsel for Defendant) would appear at an evidentiary hearing in any event.

---

[2] The First Circuit has explained, in the Rule 55(b) context:

> " 'Liquidated' means adjusted, certain, settled with respect to amount, fixed. A claim is liquidated when the amount thereof has been ascertained and agreed upon by the parties or fixed by operation of law." *Farm Family Mut. Ins.*, 501 S.E.2d at 791 (quoting *Hallett Constr. Co. v. Iowa State Highway Comm'n*, 258 Iowa 520, 139 N.W.2d 421, 426 (1966)). The classic example is an enforceable liquidated damages clause in a contract. *See* 22 Am.Jur.2d Damages § 683. Another example would be a delinquent tax assessment.

*KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 20 n.10 (1st Cir. 2003). The court further explained that "[s]ome courts and commentators appear to use the terms 'sum certain' and 'liquidated claim' interchangeably," while others do not. *See id.* Like the First Circuit in *KPS & Assocs.*, this Court "need not definitively delineate the respective ambits of the terms 'sum certain' and 'liquidated claim.'" *Id*. Rather, "[i]t is enough for [the Court] to conclude that [Plaintiff]'s claim is neither one." *Id.*

[3] The amount of Plaintiff's requested judgment is $40,666.54, which comprises "a principal amount of $14,980.88 for unpaid contributions, $3,950 for [an] internal audit, $2,757.08 interest on the unpaid contributions, $2,996.18, an amount greater of interest or 20% liquidated damages, and $15,982.40, a reasonable attorney fee and costs." (Doc. No. 64 at 2).

## CONCLUSION

For the reasons stated herein:

(1) Plaintiff's Motion for Default Judgment against Defendant (Doc. No. 63) is **GRANTED**;

(2) a separate default judgment shall be issued granting Plaintiff judgment in the amount of $40,666.54; and

(3) the pending question of whether Defendant and/or Mr. Barrington should be found to remain in contempt for violating the Court's October 1, 2019 permanent injunction is declared moot, and neither Defendant nor Mr. Barrington shall be treated going forward as in contempt, pending contrary future order of this Court.[4]

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[4] The fact that Plaintiff has requested, and the Court has acquiesced in, this finding of mootness does not mean that the Court finds Mr. Barrington's conduct acceptable. To the contrary, his disappearance from these proceedings is deeply troubling, but given the applicable mootness, the Court need not delve further into the nature and cause of his absence.